**KOLLER LAW LLC**
David M. Koller, Esq. (037082002)                                      *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **KABIR RICHARDSON,** | : | Civil Action No. |
| **92 West Allen Street** | : | |
| **Irvington, NJ 07111** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **LIBERTY COCA-COLA BEVERAGES,** | : | |
| **LLC,** | : | |
| **60 Deans Rhode Hall Road** | : | |
| **Monmouth Junction, NJ 08852** | : | |
| | : | |
| **725 E Erie Avenue** | : | |
| **Philadelphia, PA 19134** | : | |
| Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Kabir Richardson (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Liberty Coca-Cola Beverages, LLC (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, and the New Jersey Law Against Discrimination ("NJLAD"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Liberty Coca-Cola Beverages, LLC is a producer and supplier of soft drinks with a location at 60 Deans Rhode Hall Road, Monmouth Junction, NJ 08852 and with a corporate headquarters located at 725 E Erie Avenue, Philadelphia, PA 19134.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because some of the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the NJLAD.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number of 524-2019-01612 and was dual filed with the New Jersey Division on Civil Rights ("NJDCR").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated March 9, 2021. Plaintiff received the notice by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT WITH DEFENDANT

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. In April 2018, Defendant hired Plaintiff in the position of Order Builder.

21. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF NOTIFIED DEFENDANT OF HIS HAND INJURY

22. On July 2, 2018, Plaintiff notified Kevin LNU, Supervisor, that his job duties were exacerbating a previous injury to his right hand.

23. Keven instructed Plaintiff to continue to work, so that he did not accumulate any attendance points.

24. Plaintiff followed Kevin's instructions.

### PLAINTIFF REQUIRED MEDICAL TREATMENT FOR HIS HAND AND WAS DIAGNOSED WITH A DISABILITY

25. Over the following two (2) days, Plaintiff's right hand began to swell to the point that he was required to seek medical attention at Clara Mass Medical Center on July 5, 2018.

26. The attending physician gave Plaintiff an initial diagnosis of tendonitis due to repetitive use and referred him to Dr. Paul Saccone.

### PLAINTIFF WAS PLACED ON A MEDICAL LEAVE OF ABSENCE

27. On July 10, 2018, Plaintiff was examined by Dr. Saccone who placed Plaintiff on a medical leave of absence.

28. Plaintiff notified Waldo Suarez, Warehouse Manager, of his need to go out on a medical leave of absence, who then proceeded to provide him with the information to go out on a medical leave of absence with Aetna, Defendant's insurance provider.

29. Plaintiff was approved for a medical leave of absence from July 3, 2018 until July 29, 2018.

30. On July 30, 2018, Plaintiff returned to work at Defendant without any medical restrictions.

## PLAINTIFF'S HAND WORSENED AT DEFENDANT AFTER HE RETURNED FROM HIS MEDICAL LEAVE OF ABSENCE

31. However, on August 24, 2018, Plaintiff's right hand swelled up severely.

32. Plaintiff notified Elijah LNU, Supervisor, of the severe pain that he was suffering from in his right hand and that he was not able to close his hand.

33. Elijah directed Plaintiff to Maurice LNU, Shop Steward, who informed Plaintiff that he would receive an attendance point if he left work.

34. Plaintiff left work due to the severe pain and swelling in his right hand that prohibited him from completing his job duties.

## DR. SACCONE PLACED PLAINTIFF ON A SECOND MEDICAL LEAVE OF ABSENCE

35. On August 25, 2018, Plaintiff was examined by Dr. Saccone who diagnosed Plaintiff with arthritis in his right hand.

36. The major life activities affected by arthritis include, but are not limited to, lifting, working and performing manual tasks.

37. Dr. Saccone informed Plaintiff that he was going to have to go out on another medical leave of absence due to the arthritis in his right hand.

38. Initially, Dr. Saccone set the time for Plaintiff's medical leave of absence to be from August 25, 2018 to October 23, 2018.

39. Plaintiff proceeded to inform Mr. Suarez of his placement on a medical leave of absence and contacted Aetna as directed.

40. Plaintiff request for a medical leave of absence was approved.

### DR. SACCONE REEXAMINED PLAINTIFF

41. On September 18, 2018, Plaintiff was reexamined by Dr. Saccone who determined that his arthritis was not improving, but believed that he would be able to return to work at full duty on October 23, 2018.

### MR. SUAREZ REQUIRED PLAINTIFF TO HAVE TWO (2) ADDITIONAL MEDICAL EXAMINATIONS

42. Shortly afterwards, Mr. Suarez informed Plaintiff that he was required to attend appointments with Dr. Arthur P. Vasen, Hand Surgeon, and then at Innovations, located within Defendant.

43. Plaintiff attended the medical examination with Dr. Vasen, who determined that Plaintiff could return to work at light duty, and that he was to avoid gripping and grasping with his right hand.

44. On October 4, 2018, Plaintiff then attended his examination with Innovations at Defendant's location as directed by Mr. Suarez.

45. The attending physician determined that Plaintiff could not perform any transitional work ("TD") and that he was quired to remain on a medical leave of absence until he was able to work at full duty.

## MR. SUAREZ CROSSED-OUT PLAINTIFF'S PHYSICIAN'S NOTE IN AN ATTEMPT TO FORCE HIM TO RETURN TO WORK BEFORE HE WAS MEDICALLY CLEARED TO DO SO

46. As Plaintiff was leaving Defendant following his medical examination at Innovations, Mr. Suarez approached him and looked at the note from the treating physician at Innovations.

47. Mr. Suarez then instructed Plaintiff to wait for him as he took the physician's note.

48. Approximately five (5) minutes later, Mr. Suarez returned with the physician's note, gave it back to Plaintiff and told him that he now had to report back to work the following day, October 5, 2018.

49. Mr. Suarez had crossed off the no TD on the physician's note and wrote that Plaintiff could return on TD.

## DR. SACCONE EXTENDED PLAINTIFF'S MEDICAL LEAVE OF ABSENCE

50. Plaintiff then contacted Dr. Saccone and inquired if he should report to work, but was instructed to stay out per his medical leave of absence until he was medically cleared.

51. On October 16, 2018, Plaintiff was examined by Dr. Saccone who extended his medical leave of absence until November 11, 2018.

52. Plaintiff was set to return to work on November 12, 2018.

53. Plaintiff notified Defendant of his updated return to work date.

## DEFENDANT TERMINATED PLAINTIFF FOR ALLEGED UNAPPROVED ABSENCES

54. In or around the end of October 2018, Plaintiff received a termination letter dated October 22, 2018, and signed by Mr. Suarez.

55. The reason stated for Plaintiff's termination was for unapproved absences.

56. Plaintiff was confused as he still had not been cleared to return to work.

57. On November 12, 2018, Plaintiff called Defendant and spoke with Anna Marie Cruz, Human Resource Manager, that he was medically cleared to return to work.

58. However, Ms. Cruz notified Plaintiff that he was terminated.

59. It is Plaintiff's position that he was discriminated against due to his disability, denied a reasonable accommodation and retaliated against for requesting a reasonable accommodation in violation of the ADA.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

60. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

61. Plaintiff is a "qualified individual with a disability" as that term is define under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

62. Plaintiff was qualified to perform the job.

63. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

64. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

65. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

66. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

67. The purported reason for Defendant's decision is pretextual.

68. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

69. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

70. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### NEW JERSEY LAW AGAINST DISCRIMINATION

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. Plaintiff is a "qualified individual with a disability" as that term is define under the NJLAD because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

73. Plaintiff was qualified to perform the job.

74. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

75. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

76. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

77. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

78. The purported reason for Defendant's decision is pretextual.

79. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

80. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

81. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III - RETALIATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

82. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

83. Plaintiff engaged in activity protected by the ADA when he requested a reasonable accommodation for his disability.

84. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

85. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT IV – RETALIATION
### NEW JERSEY LAW AGAINST DISCRIMINATION

86. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

87. Plaintiff engaged in activity protected by the NJLAD when he requested a reasonable accommodation for his disability.

88. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

89. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Kabir Richardson, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the NJLAD.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and

65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 7, 2021      **By:**  */s/ David M. Koller*
David M. Koller, Esquire (037082002)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com

*Counsel for Plaintiff*